IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

LONNIE J. COCHRAN,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C09-2006

RULING ON JUDICIAL REVIEW

———————————

## TABLE OF CONTENTS

I.    *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *PRINCIPLES OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  *FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A.*    *Cochran's Education and Employment Background.* . . . . . . . . . . . 5
    *B.*    *Administrative Hearing Testimony.* . . . . . . . . . . . . . . . . . . . . 5
        *1.*    *Cochran's Testimony.* . . . . . . . . . . . . . . . . . . . . . . 5
        *2.*    *Vocational Expert's Testimony.* . . . . . . . . . . . . . . . . 6
    *C.*    *Cochran's Medical History.* . . . . . . . . . . . . . . . . . . . . . . . . 8

V.   *CONCLUSIONS OF LAW.* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    *A.*    *ALJ's Disability Determination.* . . . . . . . . . . . . . . . . . . . . 12
    *B.*    *Objections Raised by Claimant.* . . . . . . . . . . . . . . . . . . . . . 14
        *1.*    *Dr. Eagan's Opinions and Welshone's Opinions.* . . . . . . . . . 15
        *2.*    *The DDS Physical RFC Assessments.* . . . . . . . . . . . . . . . 18
        *3.*    *Mental Limitations.* . . . . . . . . . . . . . . . . . . . . . . . 19
    *C.*    *Reversal or Remand.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.  *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII. *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Lonnie J. Cochran on February 9, 2009, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Cochran asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Cochran requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On June 19, 2006, Cochran applied for both disability insurance benefits and SSI benefits. In his applications, Cochran alleged an inability to work since August 31, 2004 due to hip dysplasia and mental health problems. Cochran's applications were denied on September 8, 2006. On December 13, 2006, Cochran's applications were denied on reconsideration. On January 23, 2007, Cochran requested an administrative hearing before an Administrative Law Judge ("ALJ"). On September 22, 2008, Cochran appeared via video conference with his attorney before ALJ Denzel R. Busick. Cochran and vocational expert Vanessa May testified at the hearing. In a decision dated November 5, 2008, the ALJ denied Cochran's claims. The ALJ determined that Cochran was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy. Cochran appealed the ALJ's decision. On January 8, 2009, the Appeals Council denied Cochran's request for review. Consequently, the ALJ's November 5, 2008 decision was adopted as the Commissioner's final decision.

On February 9, 2009, Cochran filed this action for judicial review. The Commissioner filed an Answer on June 2, 2009. On July 6, 2009, Cochran filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform other work that exists in significant numbers

in the national economy. On August 28, 2009, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On March 18, 2009, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision 'if the ALJ's findings are supported by substantial evidence on the record as a whole[.]'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.' *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*,

393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Moore*, 572 F.3d at 522 ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005)."); *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.").

## IV. FACTS

### A. Cochran's Education and Employment Background

Cochran was born in 1967. He completed the tenth grade and later earned his GED. He also had some auto mechanics training at Hawkeye Community College, but did not complete any type of degree. At the administrative hearing, Cochran testified that he has no difficulties with reading, writing, or math.

The record contains a detailed earnings report for Cochran. The report covers Cochran's employment history from 1990 to 2008. According to the report, Cochran had no earnings from 1990 to 1995. He also had no earnings in 1999. When he was employed in the time period of 1996 to 2005, he earned between $584.90 (2005) and $14,659.90 (2000). He had no earnings in 2006, 2007, and 2008.

### B. Administrative Hearing Testimony

#### 1. Cochran's Testimony

At the administrative hearing, Cochran's attorney asked Cochran to describe his difficulties with bilateral hip dysplasia. Cochran explained that the pain in his hips caused him to have difficulty walking, standing, bending, and sitting down. Cochran further testified that he could: (1) sit for 15 to 20 minutes before needing to get up and walk around; (2) stand for about 10 minutes before needing to change positions; (3) lift about 20 pounds if he did not need to bend over to pick an object up; and (4) walk for 25 to 30 feet before starting to feel pain. According to Cochran, he is unable to help much around the house and cannot do yard work. For example, he testified that he can do dishes for 5 to 10 minutes at a time.

Cochran's attorney also asked Cochran to describe his typical day:

> Q: What time do you ordinarily get up in the morning?
> A: Usually around 6:30.
> Q: What do you do after you get up?
> A: I make -- go get a cup of coffee and just have a cigarette.
> Q: What do you do during the rest of the morning?

| | |
|---|---|
| A: | I usually sit around home and watch TV. |
| Q: | Do you change positions a lot? |
| A: | Oh, yeah. |
| Q: | What positions are you in at and how often -- or how long? |
| A: | Usually I'll sit on the couch for a while, then I'll get to the point where I got to move and I lay down for a little bit and then go back and forth. . . . |
| Q: | How long do you lay down during the day? |
| A: | Hour or two at the most. |

(Administrative Record at 345.)

Cochran's attorney also questioned Cochran regarding his mental health issues. Cochran testified that he was "a little bit" depressed. He also stated that he has "a little bit" of difficulty with concentration and paying attention. He is treated by a doctor for his depression at Black Hawk-Grundy Mental Health Center, Inc. ("Black Hawk-Grundy") in Waterloo, Iowa. According to Cochran, he began going to Black Hawk-Grundy because his "wife thought [he] had an anger management problem because [he] was too quick tempered."[1]

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who is able to perform:

> at a sedentary level of work, they'd be able to pick up 10 pounds occasionally, less than 10 [pounds] frequently, they can sit six hours out of an eight hour work day. Stand and walk combined about three [hours]. They'd need normal work breaks. No restriction in the operation of hand controls, but they would be able to climb stairs only occasionally. They should not climb ladders, scaffolds or ropes. They can balance, crouch, kneel, stoop or crawl, but only occasionally. No manipulation limits, no vision limits with glasses. No communication limits. Environmentally, they should avoid concentrated exposure to hazards such as unprotected heights,

---

[1] *See* Administrative Record at 341.

fast or dangerous machinery, high vibrations. They do have
pain and discomfort from a variety of sources that produces
mild to moderate chronic pain and discomfort noticeable to the
person at all times. However, with appropriate medications
they should be able to be active at a sedentary level of activity.
They would at all times have at least mild limits on their
activities of daily living, moderate limits under social
functioning, [and] moderate limits under concentration,
persistence and pace. It's likely they would be at least
moderately limited[:] in the ability to carry out details and the
ability to maintain extended concentration[; i]n the ability to
adapt to changes in their work routine or their work setting[;
i]n their ability to interact appropriately with the general
public[; i]n their ability to interact appropriately with co-
workers[; and i]n their ability to accept criticism [and]
instruction from supervisors.

(Administrative Record at 349.) The vocational expert testified that under such limitations,

Cochran could not perform his past relevant work. The vocational expert further testified

that Cochran could, however, perform the following work: (1) document preparer (1,300

positions in Iowa and 120,000 positions in the nation), (2) sorter (1,000 positions in Iowa

and 10,000 positions in the nation), and (3) addresser (200 positions in Iowa and 18,000

positions in the nation). The ALJ provided the vocational expert with a second

hypothetical which was identical to the first hypothetical except that:

from time to time, the person would reach marked limits in
connection with their social functioning, marked limits in
connection with their concentration, persistence and pace,
generally happening when the person is placed under severe
time limits or what might be described as stressful situations
such that one might expect those to occur once a week, such
that they might be in a marked limit of limitation for up to four
hours a week, each week.

(Administrative Record at 350.) The vocational expert testified that under such limitations,

Cochran could not find competitive work.

Cochran's attorney also provided the vocational expert with a hypothetical for an individual who:

> can lift 20 to 30 pounds either from a standing position or from a seated position. No frequent lifting, can sit up to four hours per day as long as he could get up and walk around every one hour for ten minutes, can stand or walk no more than about 10 to 15 minutes at a time. No crouching, kneeling or squatting, no climbing of ladders, only occasional climbing of stairs, no stooping, bending, or twisting. Limited to unskilled work, no close attention to detail, no work at heights or around dangerous moving machinery, only occasional contact with the public, co-workers and supervisors. Work at a regular pace generally, but that pace could be restricted to slow pace for up to a third of the time. Requires rest periods up to one to two hours during the course of the day, basically unscheduled breaks. They could range from a few minutes or up to an hour at a time and at a maximum of one to two hours per day[. G]enerally[, the individual] would be moderately limited in the ability to interact appropriately with supervisors, co-workers, and the public, but that could increase to a restriction up to four hours per week.

(Administrative Record at 354.) The vocational expert testified that under such limitations, Cochran could not find competitive work.

### C. Cochran's Medical History

On September 7, 2006, Dr. James D. Wilson, M.D., reviewed Cochran's medical records and provided Disability Determination Services ("DDS") with a residual functional capacity ("RFC") assessment. Dr. Wilson determined that Cochran could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry less than 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, and (4) sit with normal breaks for a total of about six hours in an eight-hour workday. Dr. Wilson also noted that Cochran would need to periodically alternate sitting and standing to relieve pain or discomfort, but such alternation of positions could be accomplished during normal breaks and lunch. Dr. Wilson also determined that Cochran

could occasionally climb stairs, stoop, kneel, crouch, crawl, and balance. Dr. Wilson found no manipulative, visual, communicative, or environmental limitations.

On September 25, 2006, Cochran was evaluated by Dr. Michael R. O'Rourke, M.D., at the University of Iowa Hospitals anc Clinics, for hip pain. Upon examination, Dr. O'Rourke noted that:

> Plain radiographs show dysplasia both acetabuli with rim fracture of his right hip and aspherical femoral head with an abnormal contour including flattening superior medial and non spherical lateral aspect of the head. There is a cyst present within the femoral head and the rim fracture appears chronic with sclerotic margins.
>
> Exam of his left hip shows a more regular contour of the femoral head, although not entirely spherical.

(Administrative Record at 298.) Dr. O'Rourke diagnosed Cochran with bilateral hip dysplasia with previous fracture of his acetabulum on the right side. Dr. O'Rourke recommended a hip injection for symptom relief and physical therapy as treatment.

On December 6, 2006, Dr. John May, M.D., reviewed Cochran's medical records and provided DDS with an RFC assessment. Dr. May determined that Cochran could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry less than 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. May also noted that Cochran would need to periodically alternate sitting and standing to relieve pain or discomfort. Dr. May also determined that Cochran could occasionally climb stairs, stoop, kneel, crouch, crawl, and balance. Dr. May found no manipulative, visual, communicative, or environmental limitations.

On January 10, 2007, Dr. Larry Standing, D.O., provided a letter describing Cochran's functional limitations.[2] Dr. Standing noted that Cochran has severe pain in his hips, particularly in his right hip. Dr. Standing described his gait as awkward. Specifically, Dr. Standing observed that Cochran "limps walking without support [from] any assistive device. He has a severe limp on the right. He walks very slowly."[3] Dr. Standing opined that:

> . . . [Cochran] can do lifting with his upper extremities. He should be able to lift about 20 pounds in both upper extremities relatively easily while sitting down. Standing though would be very difficult [] because of his history of falls. It would be very difficult for him to do lifting while standing without support. It is very difficult for him to ambulate, especially over uneven surfaces. . . . It is very difficult for him to crouch or bend forward due to severe pain in his hips and low back. His condition is probably only going to get worse over time. . . .
>
> Last x-ray done on his hips was 7-26-06 and the radiologist interpreted it as congential [*sic*] hip dysplasia on both the right and left, more severe on the right, and very shallow acetabulum on the right and fairly shallow acetabulum on the left.

(Administrative Record at 260-61.)

On April 16, 2007, Cochran met with Dr. B.J. Dave, M.D., for a psychiatric evaluation. Cochran informed Dr. Dave that he had "some" depression off and on with vegetative symptoms. Dr. Dave diagnosed Cochran with adjustment disorder with depressed mood, anti-social personality disorder, and congenital problems with both hips causing a limp. Dr. Dave recommended Lexapro and psychotherapy sessions as treatment.

---

[2] It is unclear who the letter was intended for because it was addressed: "To Whom It May Concern." *See* Administrative Record at 260.

[3] *See* Administrative Record at 260.

On September 18, 2007, Dr. Christopher Eagan, D.O., provided a letter describing Cochran's functional limitations.[4] Dr. Eagan stated that he treated Cochran for bilateral hip dysplasia. In observing his capabilities, Dr. Eagan opined that Cochran could:

> lift from his waist to the crown of his head approximately up to 30 pounds maximum. He cannot perform a job which requires kneeling, significant walking, or heavy work. He can push up to 64 pounds and pull up to 92 pounds but can ambulate for a maximum of 6 minutes before he notices hip discomfort. Therefore, I would recommend that he have a sit-down job where he is able to change positions and ambulate up to 10 minutes out of every hour for his hip pain. I would not recommend a heavy lifting job, one that requires crouching or kneeling or squatting. He could not work more than an 8 hour day, five days a week, therefore, I think he is relegated to sit-down-type work with 10 minute breaks for ambulation and position change.

(Administrative Record at 259.)

On August 8, 2008, Dr. Dave filled out a Mental Impairment Questionnaire supplied to him by Cochran's attorney. Dr. Dave noted that Cochran has struggled with "significant" depression and anxiety for many years. Dr. Dave further noted that Cochran's response to treatment through individual psychotherapy, counseling, and medication had been positive and cooperative. However, Dr. Dave opined that Cochran's depression and anxiety interfere with his ability to hold a full-time job and he is unlikely to ever be able to work on a regular, full-time basis. Dr. Dave identified Cochran's "signs and symptoms" as: (1) feelings of guilt and worthlessness; (2) mood disturbance; (3) recurrent and intrusive recollections of a traumatic experience which are a source of marked distress; (4) change in personality; (5) emotional withdrawal or isolation; (6) intense and unstable interpersonal relationships; (7) flight of ideas; (8) deeply

---

[4] Similar to Dr. Standing's letter, it is unclear who the letter from Dr. Eagan was intended for because it was addressed: "To Whom It May Concern." *See* Administrative Record at 259.

ingrained, maladaptive patterns of behavior; (9) illogical thinking at times; (10) involvement in activities that have a high probability of painful consequences which are not recognized. Dr. Dave also opined that Cochran's psychiatric condition exacerbates his experience of pain and other physical symptoms.[5] Dr. Dave determined that Cochran had the following limitations: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Lastly, Dr. Dave opined that Cochran's impairments or treatment would cause him to be absent from work more than four days per month.

On August 30, 2008, Cochran was examined by Robert M. Welshone, PA-C ("Welshone"), for DDS. Welshone diagnosed Cochran with hip dysplasia and bilateral hip pain. Welshone concluded that:

> [Cochran] likely does suffer from chronic pain in the hips. His x-rays do show excessive and abnormal wear, especially for someone his age. Because of this he would not be able to do physical exertion for long periods of time and would not do well in those types of positions. He would not be able to walk long distances or carry weight for long distances. Standing for long periods of time would be difficult. He would likely be more comfortable in a position allowing for some sitting, some standing and some walking throughout the day. He would likely be most comfortable in a sitting position. . . . He should not be stooping, kneeling or crawling. . . .

(Administrative Record at 310.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Cochran is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(f); *Bowen v. Yuckert*, 482 U.S. 137,

---

[5] *See* Administrative Record at 155 ("It is a cyclical relationship; the pain can also exacerbate his depression.").

140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. § 404.1520(a)-(f). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id*. The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Cochran had not engaged in substantial gainful activity since August 31, 2004. At the second step, the ALJ

concluded from the medical evidence that Cochran had the following severe combination
of impairments: hip dysplasia, depression, and a personality disorder. At the third step,
the ALJ found that Cochran did not have an impairment or combination of impairments
listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of
Impairments)]." At the fourth step, the ALJ determined Cochran's RFC as follows:

> [Cochran] has the residual functional capacity to perform
> sedentary work . . . except that: he can lift and/or carry
> 10 pounds frequently; he can lift and/or carry 10 pounds
> occasionally; he can stand and/or walk for three hours in an
> 8-hour workday; he can sit for six hours in an 8-hour
> workday; he should never climb ladders, ropes or scaffolds; he
> should only occasionally climb stairs; he should only
> occasionally balance, stoop, kneel, crouch, or crawl; he should
> have no exposure to hazards such as unprotected heights, fast
> dangerous machinery; he should avoid exposure to high
> vibrations; he has mild limitations in activities of daily living;
> he has moderate limitations on social functioning; he has
> moderate limitations on concentration, persistence and pace;
> he has moderate limitations in the ability to carry out detailed
> instruction; he has moderate limitations in the ability to
> maintain extended concentration; he has moderate limitations
> in the ability to interact with general public; he has moderate
> limitations in the ability to interact with co-workers; and he
> has moderate limitations in the ability to accept criticism or
> instruction from supervisors.

(Administrative Record at 20.) At the fourth step, the ALJ determined that Cochran could
not perform any of his past relevant work. At the fifth step, the ALJ determined that based
on his age, education, previous work experience, and RFC, Cochran could work at jobs
that exist in significant numbers in the national economy. Therefore, the ALJ concluded
that Cochran was not disabled.

### B. Objections Raised by Claimant

Cochran argues that the ALJ erred in four respects. First, Cochran argues that the
ALJ failed to give good reasons for discounting the opinions of his treating doctor,

Dr. Eagan. Second, Cochran argues that the ALJ failed to consider the work-related limitations imposed by the consultative examiner, Welshone. Third, Cochran argues that the ALJ erred in relying on physical RFC assessments prepared by disability examiners, Robert Sandahl and Dawn Farrell. Lastly, Cochran argues that the ALJ failed to fully and fairly develop the record with regard to his work-related limitations.

### 1.    Dr. Eagan's Opinions and Welshone's Opinions

Cochran argues that the ALJ failed to give good reasons for discounting the opinions of Dr. Eagan. Cochran also argues that ALJ failed to address or consider Welshone's opinions as they relate to his functional limitations. Cochran maintains that the ALJ failed to fully consider Dr. Eagan's opinions and Welshone's opinions and incorporate those opinions in his RFC assessment. Specifically, Cochran argues that the ALJ failed to provide any reasons for discounting Dr. Eagan's opinion that he needs to change positions and walk up to 10 minutes every hour during an eight-hour workday, or address Welshone's opinion that he needs to alternate between sitting, standing, and walking during an eight-hour workday. Cochran requests that this matter be reversed and remanded for further consideration of Dr. Eagan's and Welshone's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961

(8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). Additionally, the regulations require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, ___ F.3d ___, 2009 WL 2747866 at *4 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

An ALJ also has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Moreover, the ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

The ALJ's decision provides a detailed summary of the opinions expressed by Dr. Eagan in his letter dated September 18, 2007, but offers no discussion of Welshone's opinions. The ALJ also fails to offer any discussion or determination of the weight Dr. Eagan's and Welshone's opinions should receive. Furthermore, as Cochran points out, the ALJ, in determining his RFC, provides no discussion or indication that he considered Dr. Eagan's opinion that he would need to change positions and walk up to 10 minutes every hour during an eight-hour workday, or Welshone's opinion that he would need to alternate between sitting, standing, and walking during an eight-hour workday.

An ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. An ALJ must also assess a claimant's RFC on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence includes the opinions of treating physicians. *Lacroix*, 465 F.3d at 887. If an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2). The Court finds that the ALJ has failed to meet these requirements. In addition to failing to weigh Dr. Eagan's opinions, the ALJ, in his decision, failed to provide any reasons, let alone "good reasons" for either including or excluding

17

Dr. Eagan's opinions regarding Cochran's functional limitations in his RFC determination. With regard to Welshone's opinions, the ALJ failed to even address his opinions in his decision. Therefore, the Court finds that this matter should be remanded so that the ALJ may fully and fairly develop the record with regard to Dr. Eagan's and Welshone's opinions. On remand, the ALJ shall address Welshone's opinions. The ALJ must also provide clear reasons for accepting or rejecting both Dr. Eagan's and Welshone's opinions and support his reasons with evidence from the record, particularly with regard to Cochran's RFC.

### 2. The DDS Physical RFC Assessments

Cochran argues that the ALJ relied on DDS physical RFC assessments which were prepared by non-physician disability examiners rather than by DDS consultative physicians. Cochran contends that "[t]here is nothing in the record to indicate that, in fact, either Dr. Wilson or Dr. May completed the residual functional capacity assessment forms that the ALJ relied upon in making his decision."[6] The Commissioner refutes Cochran's argument and points out that the RFC assessments cited by Cochran bear the electronic signatures of Dr. James D. Wilson, M.D., and John May, M.D. Accompanying the RFC assessments are referral forms from the disability examiners requesting that Drs. Wilson and May review Cochran's medical records and provide an RFC assessment.[7] Because there is no evidence that Drs. Wilson and May did not review Cochran's medical records and then make RFC determinations, the Court finds no error and determines that Cochran's argument is without merit.

---

[6] See Cochran's Brief at 13.

[7] See Administrative Record at 262, 308.

### 3. Mental Limitations

Cochran argues that "the ALJ's mental limitations [in his RFC are] not at all clear."[8] Cochran maintains that the ALJ failed to fully and fairly develop the record as to the mental limitations included by the ALJ in the ALJ's RFC assessment. In particular, Cochran argues that the ALJ failed to address or explain his findings and explain his reasons for determining Cochran's mental limitations.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Similar to the opinions of Dr. Eagan and Welshone, the ALJ, in his decision, outlines the pertinent medical evidence regarding Cochran's mental health issues, but offers no discussion, explanation, or reasoning for accepting or rejecting such evidence. The ALJ also fails to address how the evidence pertains to Cochran's RFC. Because the Court is unable to ascertain how the ALJ determined Cochran's mental limitations and how those limitations were incorporated in the ALJ's RFC assessment for Cochran, the Court finds that the ALJ failed to fully and fairly develop the record. *See Cox*, 495 F.3d at 618.

---

[8] *See* Cochran's Brief at 16.

Therefore, on remand, the ALJ must explain his reasoning as to his findings regarding Cochran's mental limitations and how those finding relate to Cochran's RFC.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to the opinions of Dr. Eagan and Welshone, and the findings relating to Cochran's mental limitations. Accordingly, the Court finds that remand is appropriate.

### VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ should develop the record fully and fairly with regard to the opinions of Dr. Eagan and Welshone. Specifically, the ALJ shall provide clear reasons for accepting or rejecting the opinions of Dr. Eagan and Welshone. The ALJ

must also explain the reasons for his RFC determination, especially as they relate to Cochran's mental limitations.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this _30th_ day of September, 2009.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA